UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      v.<br><br>KARL F. THOMPSON, JR.,<br><br>             Defendant. | No. CR-09-88-FVS<br><br>ORDER DENYING THE DEFENDANT'S "MOTION FOR NEW TRIAL" |

**THIS MATTER** comes before the Court based upon the defendant's "Motion for New Trial." He is represented by Carl J. Oreskovich and Courtney A. Garcea. The United States is represented by Joseph H. Harrington, Aine Ahmed, and Timothy M. Durkin.

**BACKGROUND**

The parties are familiar with the facts of this case. This order sets forth only those facts that are necessary for the resolution of the defendant's "Motion for New Trial."

**STANDARD**

The defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33(a). Rule 33(a) states in pertinent part, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A district court's authority to grant a motion for a new trial under Rule 33(a) is much broader than its authority to grant a motion for a judgment of

Order - 1

acquittal under Rule 29(c).  *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir.1992).  In *Alston*, the Ninth Circuit explained:

> The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses. . . .  If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.

*Id.* at 1211-12 (internal punctuation and citations omitted).

**WHETHER ALLOWING THE VERDICTS TO STAND WOULD WORK A SERIOUS MISCARRIAGE OF JUSTICE**

<u>A. Count One</u>

Count One alleged the defendant violated 18 U.S.C. § 242 by willfully depriving Otto Zehm of his Fourth Amendment right to be free from objectively unreasonable force.  The United States had to prove four elements beyond a reasonable doubt:  First, the defendant acted under color of law.  Second, he deprived Mr. Zehm of his Fourth Amendment right to be free from objectively unreasonable force.  Third, he acted willfully.  Fourth, his conduct resulted in bodily injury to Mr. Zehm.  In moving for a new trial, the defendant focuses upon the third element.  He alleges the evidence preponderates heavily against the jury's determination he acted willfully.  According to him, a serious miscarriage of justice will occur if the verdict on Count One is allowed to stand.  He cites the following circumstances:

Order - 2

There was evidence indicating his actions served a legitimate law enforcement purpose. Grant Fredericks' analysis of the video recordings of the opening seconds of the confrontation is inconsistent with, and undermines, Dr. Richard Gill's analysis. The video recordings don't capture all of the confrontation; many important things occurred "off camera." Evidence indicating the defendant admitted striking Mr. Zehm in the head is unreliable, and there is no evidence the defendant gratuitously employed force against Mr. Zehm.

*Ruling:*

Presumably, the jury determined the defendant employed objectively unreasonable force during his struggle with Mr. Zehm. The jury's determination is supported by substantial evidence. Allowing it to stand does not pose a serious risk of injustice. Can the same be said of the jury's determination the defendant acted willfully? As he points out, the evidence of willfulness was not overwhelming. The jury could have found otherwise based upon the evidence that was presented to it. Nevertheless, the Court cannot say a serious miscarriage of justice will occur if the jury's finding of willfulness is allowed to stand.

B. Count Two

Count Two alleged the defendant violated 18 U.S.C. § 1519 by knowingly making a false entry in a record and document with the intent to impede, obstruct, or influence an investigation of a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"). The United States had to prove two elements beyond a

reasonable doubt: First, the defendant knowingly made a false entry in a record or document. Second, the defendant did so with the intent to impede, obstruct, or influence the investigation of matter within the jurisdiction of the FBI. In moving for a new trial, the defendant focuses upon the first element. He alleges the evidence preponderates sufficiently heavily against the jury's determination he knowingly made a false entry in a record or document that a serious miscarriage of justice may have occurred. He cites the following circumstances: The video recordings are incomplete. They do not present Mr. Zehm's facial expressions. Some of the testimony of the percipient witnesses is consistent with his (the defendant's) account of the confrontation. Admittedly, some of his statements were inaccurate, but he was trying to remember and describe a complex series of actions that unfolded very rapidly under extremely stressful circumstance.

*Ruling:*

The defendant does not dispute his account of the confrontation is materially inconsistent with the video evidence and the observations of the percipient witnesses. Nevertheless, he maintains any inaccuracies in his account are attributable to faulty memory rather than to an intent to deceive. The jury did not accept his explanation.

**WHETHER THE COURT IMPROPERLY ADMITTED EVIDENCE OF MR. ZEHM'S INNOCENCE**

In rulings issued prior to, and during, the defendant's trial, the Court attempted to balance two competing interests. One interest

Order - 4

was the defendant's interest in having the jury determine whether his actions were objectively reasonable in light of the facts confronting him on March 18, 2006.  The other interest was the United States' interest in testing the accuracy of his account of what occurred in the convenience store.  At trial, the United States argued it should be allowed to present some evidence indicating Mr. Zehm had innocent reasons for being in the convenience store.  Such evidence was necessary, said the United States, in order to rebut the suggestion Mr. Zehm had gone inside the store in order to hide from the police. The Court allowed the United States to present three pieces of evidence to which the defendant objected at trial and to which he continues to take exception:  a convenience store employee testified he had seen Mr. Zehm purchase Pepsi numerous times at a different store; a police officer said she heard Mr. Zehm say, shortly before he stopped breathing, "All I wanted was a Snickers."  Finally, a different police officer said Mr. Zehm had his paycheck in hand when the officer arrived.

   *Ruling:*

   The defendant was entitled to have the jury determine whether his actions were objectively reasonable in light of the circumstances that confronted him on March 18, 2006.  Evidence that Mr. Zehm had innocent reasons for being in the convenience store did not distract the jury from its task.  The evidence gave the United States an opportunity to argue its theory of the case (*i.e.*, that Mr. Zehm neither defied the defendant nor threatened him) without depriving the defendant of an

Order - 5

opportunity to argue his theory of the case (*i.e.*, he reasonably thought Mr. Zehm posed an immediate risk of harm).

**WHETHER DELIBERATING JURORS CONSIDERED EXTRANEOUS PREJUDICIAL INFORMATION**

Shortly after the jury rendered its verdicts, the defendant's attorneys sought permission to interview the jurors in order to determine whether their deliberations had been influenced by extraneous prejudicial information. Counsel cited four categories of evidence that, in their opinion, indicated the deliberative process had been compromised. One category of evidence consisted of statements the presiding juror, Diane Riley, made to the news media after she learned the defendant's attorneys were challenging the jury's verdicts. The Court denied counsel's request to interview the jurors. In doing so, the Court analyzed some of Ms. Riley's statements to the news media. The Court concluded her statements did not indicate the jurors had been exposed to extraneous prejudicial information. Two or three months passed. An alternate juror encountered a Court Security Officer ("CSO") in Yakima, Washington. The alternate told the CSO other jurors had discussed the merits of the case while the parties were still presenting evidence. The alternate thought at least some jurors had made up their minds before deliberations began. Given the alternate juror's comments to the CSO, the Court interviewed the alternate and three jurors who participated in deliberations. The interviews did not produce evidence indicating that jurors made up their minds prior to deliberations or that, during

deliberations, they considered extraneous prejudicial information.

*Ruling:*

The verdicts were not tainted by premature discussions among the jurors or by the jurors' consideration of extraneous prejudicial information.

**WHETHER THE COURT'S INSTRUCTIONS CONCERNING "WILLFULNESS" AND SELF-DEFENSE DEPRIVED THE DEFENDANT OF A FAIR TRIAL**

The defendant argues he was deprived of a fair trial by erroneous jury instructions. He cites both Instruction No. 12 (definition of "willfully") and Instruction No. 11 (self defense).

A. Definition of "Willfully"

Over the defendant's objection, the Court gave the following definition to the jury:

> "Willfully" means that the defendant acted voluntarily and intentionally, with the intent not only to act with a bad or evil purpose, but specifically to act with the intent to deprive Otto Zehm of a right that is made definite by the Constitution.
>
> To find that the defendant acted willfully, you must find that the defendant not only had a generally bad or evil purpose, but also that the defendant had the specific intent to deprive Mr. Zehm of his Fourth Amendment right to be free from objectively unreasonable force. This does not mean that the government must show that the defendant acted with knowledge of the particular provisions of the Fourth Amendment to the Constitution, or that the defendant was even thinking about the Fourth Amendment when he acted.
>
> One may be said to act willfully if he acts in open defiance or in reckless disregard of a known and definite constitutional right -- in this case, the right to be free

Order - 7

> from objectively unreasonable force.  This specific intent
> to deprive another of a constitutional right need not be
> expressed; it may at times be reasonably inferred from the
> surrounding circumstances of the act.  Thus, you may look at
> the defendant's words, experience, knowledge, acts and their
> results in order to decide the issue of willfulness.
> 	If you find that the defendant had the purpose -- that
> is, the end at which his act was aimed -- to deprive Mr.
> Zehm of his Fourth Amendment right to be free from
> objectively unreasonable force, then the defendant acted
> willfully.  By contrast, if you find the defendant acted
> through mistake, carelessness, or accident, then he did not
> act willfully.

(ECF No. 719.)  The defendant argues the Court's "willfulness" instruction misstated the law as it has been established by the Supreme Court.  According to the defendant, the United States had to prove he "had a general bad or evil purpose to act with the specific intent to either 1) knowingly depriving a person of their rights under the Constitution; or 2) acting in open defiance or reckless disregard of a person's rights."  Defendant's Reply (ECF No. 1047) at 15.  The defendant cites *Screws v. United States*, 325 U.S. 91, 104, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), in support of his definition of the term "willfully."  The defendant argues the Court's definition allowed the jury to believe it could conclude he acted willfully if it found he "acted 1) with a bad or evil purpose to deprive [Otto] Zehm of his constitutional rights or, 2) in open defiance or reckless disregard of this right, irrespective of his bad or evil intent."  Defendant's Reply at 14.

Order - 8

*Ruling:*

Defining the term "willfully" is difficult because there are two ways in which a person's behavior may be considered willful. As the Eleventh Circuit observed recently, "A person acts 'willfully' for purposes of section 242 when he acts with 'a specific intent to deprive a person of a federal right made definite by decision or other rule of law,' or 'in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite.'" *United States v. House*, 684 F.3d 1173, 1199-1200 (11th Cir.2012) (quoting *Screws v. United States*, 325 U.S. 91, 103, 105, 65 S.Ct. 1031, 1036-37, 89 L.Ed. 1495 (1945)). Ninth Circuit law is in accord. *See, e.g., United States v. Reese*, 2 F.3d 870, 881 (9th Cir.1993) (quoting the passage quoted by the Eleventh Circuit). The definition of the term "willfully" that the Court gave in this case -- *i.e.*, Instruction No. 12 -- set forth both ways in which a person's behavior may be considered willful. While Instruction No. 12 may not be a model of clarity, it is an accurate statement of the law.

B. Self Defense

The other instruction the defendant objects to is Instruction No. 11. It stated:

> A person is entitled to defend himself against the immediate use of objectively unreasonable force by a police officer. However, the person may use no more force than appears reasonably necessary under the circumstances.

(ECF No. 719.) As the defendant points out, a person is entitled to defend himself if he is confronted with the immediate use of

Order - 9

objectively unreasonable force by a police officer.  Here, the threshold issue was whether the defendant employed objectively unreasonable force.  The jury would not have been permitted to consider self defense unless it first found the defendant employed objectively unreasonable force.  However, in that case, it was unnecessary to consider self defense.  Thus, in the defendant's opinion, the self defense instruction was superfluous and distracting.

*Ruling:*

There was substantial evidence Mr. Zehm physically resisted the officers.  This instruction informed jurors his resistance was lawful as long he reasonably believed he was confronted with an immediate use of objectively unreasonable force by the officers.  Had the Court not given this instruction, jurors might have wondered whether he broke the law simply by resisting the defendant and the other officers.

**WHETHER THE UNITED STATES ENGAGED IN PROSECUTORIAL MISCONDUCT**

The defendant alleges the United States engaged in two types of prosecutorial misconduct.

<u>A. Pretrial</u>

The defendant alleges the United States intentionally withheld information that is favorable to him.

*Ruling:*

This allegation is addressed in a separate order.

<u>B. Trial</u>

The defendant alleges the United States deprived him of a fair trial by the following:  (1) repeatedly asserting or implying, during

Order - 10

its opening statement and closing argument, that Mr. Zehm was innocent of wrongdoing at the ATM, and (2) during its closing argument, falsely stating Detective Ferguson recommended that country prosecutors refrain from filing a criminal charge against him (the defendant).

*Ruling:*

The statements and arguments to which the defendant objects may or may not have been improper, but they did not deprive him of a fair trial.

**IT IS HEREBY ORDERED:**

The defendant's "Motion for New Trial" (**ECF No. 818**) is **denied.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___18th___ day of September, 2012.

        s/ Fred Van Sickle
        Fred Van Sickle
   Senior United States District Judge

Order - 11